<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| STERLING MEDICAL SERVICES, LLC, | : | |
| Plaintiff, | : | Civil Action No. 06-1182 |
| v. | : | |
| MICHAEL CALOGERO, | : | <u>OPINION</u> |
| Defendant. | : | |

**RODRIGUEZ,** Senior District Judge:

This case comes before the Court on Defendant's Motion to Dismiss the Amended Complaint and on Plaintiff's Motion for a Preliminary Injunction. Attorneys for the parties appeared before the Court for oral argument on Thursday, September 14, 2006. The record of that proceeding is incorporated here.

## <u>BACKGROUND</u>

This is a breach of contract case which was removed to this Court based upon diversity of citizenship. Plaintiff Sterling Medical Services, LLC filed suit against its ex-employee, Defendant Michael Calogero, seeking injunctive relief relating to a non-competition provision contained in Calogero's employment contract. The October 1, 2004 Executive Employment Agreement provided that Calogero would not provide "substantially similar executive services" to any of Sterling Medical's competitors in the continental United States for two years after the termination of his employment with

Sterling Medical (the "Noncompete Covenant").[1]  It also stated that for five years after termination, Calogero would not disclose, and would maintain the confidentiality of, Sterling Medical's proprietary and confidential information (the "Confidential Information" provision).  Finally, the Executive Employment Agreement provided that Calogero would not solicit, directly or indirectly, any customers or actively-sought prospective customers of Sterling Medical located within the continental United States, with whom he had Meaningful Business Contact for two years after the termination of his employment with Sterling Medical (the "Nonsolicitation of Customers or Prospects" provision).  The Noncompete Covenant is the only provision implicated in the Amended Complaint.

      The Executive Employment Agreement was to terminate on October 1, 2005; however, it would automatically renew unless either party provided written notice of non-renewal at least 30 days prior to the annual anniversary date.

      October 28, 2005 was Calogero's last day of work with Sterling Medical (he gave prior notice of his resignation).  Subsequently, Calogero became an employee of Medline Industries, Inc. near Chicago, allegedly violating the provisions of his Executive Employment Agreement with Sterling Medical.

      Sterling Medical is in the business of distributing, selling, and marketing to the healthcare industry medical-surgical disposable supplies and customized specialty

---

[1] Specifically, Defendant was prohibited from providing "substantially similar executive services to [an] entity engaged in selling or providing any Competitive Services," which are defined elsewhere in the Agreement as "services or products that are substantially similar to or competitive with any of the services or products provided by [Plaintiff]."

disease management services programs.  As an executive for Sterling Medical, Calogero served as a clinical adjunct to Sterling Medical's sales and operations teams and had access to Sterling Medical's proprietary and confidential information regarding its business and its customers.  In addition, he served as Sterling Medical's pharmacist-in-charge, responsible for license compliance and internal training and development of clinical programs.  There are no allegations, however, that Defendant has solicited customers with whom he worked at Sterling Medical; nor are there allegations that Defendant has disclosed any confidential or proprietary information.

Indeed, on April 12, 2006, the parties filed a stipulation expressly providing that Sterling Medical is not pursuing claims relating to either the Confidential Information provision or the Non-Solicitation of Customers or Prospects provision.  Rather, Sterling Medical has alleged that Calogero, within two years after termination of his employment with Sterling Medical, has provided substantially similar executive services to that part of Medline Industries which allegedly is engaged in selling or providing Competitive Services.  If this allegation is true, Calogero would be in violation of the Executive Employment Agreement.  He has argued, however, that the Noncompete covenant is unenforceable under New Jersey law because its sole purpose is to restrict competition.

Thus, citing <u>Whitmyer Bros. v. Doyle</u>, 274 A.2d 577, 582-84 (N.J. 1971) (finding there is no justification for a non-competition covenant on an ex-employee where the "harm" is only that the new employer becomes a more efficient competitor by virtue of having a competent and efficient employee), Defendant seeks to have the Amended Complaint dismissed under Federal Rule of Civil Procedure 12(b)(6), arguing that the covenant not to compete in this case is unenforceable under New Jersey law because its

3

sole purpose is to prevent competition.  Additionally, Defendant argues that Plaintiff has an adequate remedy at law,² which Plaintiff disputes, asserting that irreparable injury is inevitable. ³

## DISCUSSION

### A. Standard on Motion to Dismiss

When considering a Rule 12(b)(6) motion to dismiss a complaint, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991); Rogin v. Bensalem Twp., 616 F.2d 680, 685 (3d Cir. 1980).  A court may not dismiss the complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (citations omitted); see also D.P. Enters., Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

---

² Defendant also argues that the Plaintiff should have pursued that remedy in arbitration, but acknowledges Plaintiff's right, provided for in the Agreement, "to seek injunctive relief in a court of competent jurisdiction without first resorting to arbitration."

³ Finally, Defendant argues that the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(4) and (5) for insufficiency of process because no summons was issued in the case.  Rather, an Order to Show Cause was issued by the Superior Court and served, along with the Complaint, which was an insufficient substitute for a summons according to Local Civil Rule 65.1(a) and New Jersey Court Rule 4:52-1(b).  Defendant also argues that service was improper because Plaintiff did not file an affidavit of inquiry attesting to the fact that personal service could not be effected in New Jersey before Defendant was served at his home in Illinois and because he was served after the return date set by the New Jersey Court Rules.  In response, Plaintiff has presented the Court with a litany of instances by which Defendant has involved himself in this litigation.  In so doing, Plaintiff has argued that Defendant has waived any challenge to sufficiency of process.

It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, a complaint need not spell out the theory of liability under which the plaintiff hopes to recover. See Evans Prods. Co. v. West Am. Ins. Co., 736 F.2d 920, 923 (3d Cir. 1984). It is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quoting Conley, 355 U.S. at 47).

Finally, a court reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

**B.  Restrictive Covenants**

A restrictive covenant is enforceable when "it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public." Maw v. Advanced Clinical Communications, Inc., 179 N.J. 439, 447, 846 A.2d 604, 609 (2004); Ingersoll-Rand Co. v. Ciavatta, 110 N.J. 609, 628, 542 A.2d 879 (1988); Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 32-3, 274 A.2d 577, 581

(1971); Solari Industries, Inc. v. Malady, 55 N.J. 571, 576, 264 A.2d 53 (1970).  The first two prongs of the test require balancing an employer's interests in protecting proprietary and confidential information and the asserted hardship on the employee.  Maw, 179 N.J. at 447.  The third prong requires the court to analyze the public's concern in fostering competition, creativity, and ingenuity.  Id.  Depending upon the results of this three-part analysis, the restrictive covenant may be completely enforced, partially enforced to the extent reasonable under the circumstances, or disregarded.  Cmty. Hosp. Group, Inc. v. Moro, 183 N.J. 36, 55, 869 A.2d 884 (2005).

Thus, to determine that a restrictive covenant in a post-employment contract is reasonable and therefore enforceable, the court must determine that the restrictive covenant protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not adverse to the public interest.  Pierson v. Medical Health Centers, P.A., 869 A.2d 901, 904 (N.J. 2005).  See also Maw, 179 N.J. at 447, 846 A.2d at 609; Solari Industries, 55 N.J. at 576, 264 A.2d 53; Whitmyer Bros., 58 N.J. at 32-3, 274 A.2d at 581; Ingersoll-Rand Co., 110 N.J. at 628, 542 A.2d at 888.  Three additional factors are considered in determining whether a restrictive covenant protects a business's legitimate business interests: its duration, the geographic limits, and the scope of activities prohibited.  Cmty. Hosp. Group, Inc., 183 N.J. at 58-59.  Each of those factors must be tailored to ensure the restrictive provision is no broader than necessary to protect the employer's interests.  Id.  Accordingly, a restrictive covenant does not impose undue hardship on an employee when its provisions are tailored to protect the employer's legitimate interests.  Coskey's Television, 253 N.J. Super. at 636, 602 A.2d at 794.

## C.  Analysis of Claim

Employers have an interest in protecting their customer relationships, trade secrets, and confidential business information, including the identity of customers, but Sterling Medical has stipulated here that those interests are not at issue in this case. Also removed from the case by stipulation of the parties, are protectable buying habits of Sterling Medical's customers, the form of Sterling Medical's mark-up history, merchandising plans, sales projections, and pricing strategies.  The only provision of the Executive Employment Agreement that Sterling Medical has chosen to pursue is Paragraph 9, prohibiting Calogero from providing "substantially similar executive services to [an] entity engaged in selling or providing any Competitive Services," which are defined as "services or products that are substantially similar to or competitive with any of the services or products provided by [Plaintiff]."

Plaintiff has argued that this covenant is enforceable because, by virtue of the fact that Defendant is working for a competitor, there is a sufficient likelihood that he will disclose confidential and proprietary information.  The Court is at a loss, then, as to why Plaintiff stipulated to drop any claim implicating the Confidential Information provision of the Agreement.  Perhaps it is because there is no dispute that Defendant has not disclosed any confidential or proprietary information.  In addition, Calogero has represented that he has no intention of disclosing any confidential information, nor does Medline intend to use any.

Thus, the Court is faced with assessing the degree of risk of inadvertent disclosure of confidential information presented by Defendant's employment with Medline.  To that end, the Court attempted during oral argument to ascertain what Calogero was

7

doing for Medline that threatened to disclose confidential aspects of what he was doing for Sterling Medical. In delving into such an analysis, however, the Court is forced to look beyond the pleadings, taking this issue outside the realm of a motion to dismiss. Defendant has not presented any precedent on which this Court could rely, which inflicted the harsh result of dismissal of the former employer's claim because a restrictive covenant analogous to the one in this case was determined to be invalid on its face. As such, the Court will not dismiss the Complaint at this time.

**D. Injunctive Relief**

For this Court to grant a preliminary injunction, the moving party must show: 1) it is likely to succeed on the merits and 2) denial will result in irreparable harm to the moving party. BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000); Maldonado v. Houstoun, 157 F.3d 179, 184 (3d Cir. 1998); Opticians Assoc. v. Independent Opticians, 920 F.2d 187, 192 (3d Cir. 1990). In addition, the Court should consider whether granting the injunction is in the public interest. See id.; see also Acierno v. New Castle County, 40 F.3d 645, 647 (3d Cir. 1994).

Despite that the Court has not dismissed the case on a Rule 12(b)(6) motion, Sterling Medical has not shown a reasonable probability of success on the merits. In addition, Plaintiff has asserted that it would be irreparably harmed if preliminary injunctive relief is not granted due to possible inadvertent disclosure that arises from Defendant's employment with an alleged competitor. The Third Circuit has instructed, however, that "[r]isk of harm if information is inadvertently disclosed . . . is not sufficient." Continental Group, Inc. v. Amoco Container Co., 614 F.2d 351, 358 (3d Cir. 1980). Rather, "[t]here must be an imminent threat of the allegedly harmful

8

disclosure." Id. at 358-59.[4]  That is, injunctive relief will not be granted on the premise that "the harm will occur only in the indefinite future." Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992).  Because the Plaintiff has not shown either a probability of success on the merits or irreparable harm if preliminary injunctive relief is not granted, its motion will be denied.

## CONCLUSION

For the foregoing reasons, as well as those set forth on the record of September 14, 2006, Defendant's Motion to Dismiss the Amended Complaint will be denied, as will Plaintiff's Motion for a Preliminary Injunction.  An appropriate Order will be granted this date.


Dated: December 21, 2006                                  /s/Joseph H. Rodriguez
                                                          Joseph H. Rodriguez, U.S.D.J.

---

[4]Although public interest favors protection against the threat of unfair competition and, in general, of Sterling Medical's proprietary information, Plaintiff has not articulated with requisite specificity the harm to the public that arises from Calogero's employment with Medline.